**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **BERNARD JACKSON** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 14-2996** |
| | : | |
| **MICHAEL WENEROWICZ et al.** | : | |

---

**McHUGH, J.**                                                              **May 24, 2021**

**<u>MEMORANDUM</u>**

This is a Motion for Relief from Judgment under both Civil Rule 60(b)(2) and 60(b)(6) filed by Petitioner Bernard Jackson, a state prisoner, arising out of Petitioner's 1985 murder conviction. ECF 28; This is Petitioner's second motion for relief under Rule 60, following the denial of his habeas petition in 2015. Because Petitioner's motion is untimely under Rule 60(b)(2) and because he has failed to establish extraordinary circumstances warranting relief under Rule 60(b)(6), the motion will be denied.

## I.     RELEVANT FACTUAL AND PROCEDURAL HISTORY[1]

Following a jury trial in December 1985, Mr. Jackson was found guilty of first-degree murder, burglary, and conspiracy, and sentenced to life imprisonment, along with co-conspirators Gregory Campbell[2] and Veleda Broaddus.[3] *Com. v. Jackson*, No. 2414 EDA 2018, 2019 WL

---

[1] The facts set forth in this background and procedural history were adopted from Petitioner's habeas petition and attachments thereto, Pet'r's Habeas Pet., ECF 1, the Report and Recommendation of Magistrate Judge Henry S. Perkin, R. & R., ECF 14, Petitioner's objections to the Report and Recommendation and attachments thereto, Pet'r's Obj. to R. & R., ECF 17, Plaintiff's first Rule 60 motion for relief and attachments thereto, Pet'r's Mot. Relief, ECF 28, and numerous memorandum opinions of the PCRA Court regarding Petitioner's claims.

[2] The jury convicted Campbell of these charges on December 21, 1985. *Com. v. Campbell*, No. 3430 EDA 2018, 2019 WL 4200886, at *1 (Pa. Super. Sept. 5, 2019).

[3] *See* https://ujsportal.pacourts.us/Report/CpDocketSheet?docketNumber=CP-51-CR-0104482-1985&dnh=ugl9XJM0%2B4seSXqr5qOd6g%3D%3D (last visited May 13, 2021).

4200999, at *1 (Pa. Super. Ct. Sept. 5, 2019). The murder occurred at the home of the decedent, Alvin Gass, and decedent's wife, Freda Dowling, during a home invasion. *Id.* The testimony of Freda Dowling, who was pushed to the floor by the Petitioner during the invasion and who identified Petitioner from a photo array four days after the crime, and again at the trial, was one of the critical pieces of evidence introduced by the prosecution. *Id.* (citing *Com. v. Jackson*, No. 3216 Philadelphia 1986, unpublished memorandum at 1–2 (Pa. Super. filed May 17, 1988)). The Superior Court of Pennsylvania affirmed the Judgment. *Com. v. Jackson*, 545 A.2d 384 (Pa. Super. 1988).

A. <u>Initial Post Conviction Relief Act ("PCRA") proceedings and Petition for Writ of Habeas Corpus</u>

Jackson's first PCRA petition was denied, a decision affirmed by the Pennsylvania Superior Court in October 1992. *Com. v. Jackson*, 620 A.2d 539 (Pa. Super. 1992). In 1993, Jackson received notice of the Supreme Court's denial of his petition for allowance of appeal. Pet'r's Habeas Pet. 32. More than twenty years later, on May 27, 2014, Jackson filed a petition for a writ of habeas corpus, asserting that his constitutional rights were violated due to ineffective assistance of counsel, among other things. Pet'r's Habeas Pet. 6-20, ECF 1. I adopted the well-reasoned Report and Recommendation of Magistrate Judge Perkins, *see* R. & R., ECF 14, and denied the petition as time barred under the strict one-year statute of limitations found in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2244(d); *see* 11/3/15 Order, ECF 20. Petitioner appealed my decision not to issue a Certificate of Appealability, which the Third Circuit affirmed in May 2016.[4] ECF 23.

---

[4] Simultaneously, Petitioner was pursuing a second PCRA petition, filed in May 2014, which was again denied by the PCRA Court. The Superior Court affirmed the dismissal, and the Pennsylvania Supreme Court denied leave to appeal. *See Com. v. Jackson*, 2016 WL 49018 at *1-2 (Pa. Super. Feb. 5. 2016); *Com. v. Jackson*, 158 A.3d 1242 (Pa. 2016).

A. Petitioner's 2017 Motion for Relief under Rule 60

 In 2017, Petitioner filed a Rule 60(b)(6) motion for relief based on *Satterfield v. Dist. Att'y Phila.*, 872 F.3d 152, 159 (3d Cir. 2017) and *McQuiggen v. Perkins*, 133 S. Ct. 1924, 1931 (2013) (holding that under the "fundamental miscarriage of justice exception," a habeas petitioner can pursue his constitutional claims on the merits despite a procedural bar to relief where the petitioner makes a credible showing of actual innocence). Petitioner argued that a 2014 affidavit signed by co-conspirator Broaddus—which had already been fully considered in resolving his habeas petition— constituted a credible showing of actual innocence that would allow him to pursue his time-barred claims on the merits. Pet'r's Memo. L. Mot. Relief, Dec. 13, 2017, at 17-18, ECF 25. The affidavit placed Petitioner and Broaddus together at the time of the murder—but not at the scene of the murder. Pet'r's Memo. L. Habeas Pet., Ex.C., ECF 1 at 56. I denied Petitioner's motion[5] because the Magistrate Judge in his Report had already considered and rejected Petitioner's claim that co-defendant Broaddus—who was also convicted—would be able to offer credible testimony altering the outcome of Petitioner's trial under the demanding standard articulated by the Supreme Court in *Schlup v. Delo*. 513 U.S. 298 (1995) (a court evaluating a gateway actual innocence claim may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence). R. & R. at 10-12. In sum, I determined that the Broaddus affidavit was neither new nor reliable under *Schlup*, *see* 513 U.S. at 324, and I was not persuaded that with the addition of the affidavit, "no reasonable juror would have found the defendant guilty." *Id.* at 329.

---

[5] 4/20/18 Order, ECF 26.

B. Petitioner's 2020 Motion for Relief under Rule 60

On November 5, 2020, Petitioner filed a second Rule 60 motion, ECF 28,[6] this time based not only on *Satterfield* and *McQuiggen* but also on *Reeves v. Fayette SCI, et al.*, 897 F.3d 154, 164 (3d Cir. 2018). Pet'r's Memo. L. Mot. Relief 2-3.[7] According to Petitioner, *Reeves* constituted a change of law that warrants reconsideration pursuant to Rule 60(b)(6). *Reeves* held that "when a petitioner asserts ineffective assistance of counsel based on counsel's failure to discover or present to the fact-finder the very exculpatory evidence that demonstrates his actual innocence, such evidence constitutes new evidence for purposes of the *Schlup* actual innocence gateway." 897 F.3d at 164. On that basis, Petitioner contends that the alibi testimony from co-defendant Broaddus and others that trial counsel allegedly failed to present constitutes "new" evidence under *Schlup*. *See* 513 U.S. at 324. He also contends that trial counsel provided ineffective assistance by failing to advance an investigation of another suspect, Franklin Bond—again framing this as new evidence that ought to be considered in light of *Reeves*. Mot. at 4. And finally, he presents two statements that he characterizes as new evidence: (1) a 2017 "letter-statement" from Wanda Campbell, co-defendant Campbell's sister, and (2) an affidavit from David Mack, Petitioner's fellow inmate. Pet'r's Memo. L. Mot. Relief 4.

---

[6] This Rule 60 motion followed the denial of Petitioner's third PCRA petition in July 2018, which the Superior Court affirmed in September 2019. *See Com. v. Jackson*, No. 2414 EDA 2018, 2019 WL 4200999, at *2 (Pa. Super. Sept. 5, 2019). Petitioner raised the same newly discovered evidence in that petition that he now raises before this Court. *Id.* at 6.

[7] *Reeves* was decided after the denial of Petitioner's initial Rule 60 motion in 2018.

## II.     LEGAL STANDARD[8]

I note at the outset that the Petitioner is not eligible for relief under Civil Rule 60(b)(2). His motion was filed more than a year after the denial of his habeas petition in 2015—and more than a year after the denial of his initial Rule 60 motion, and is therefore barred by the time limit imposed by Rule 60(c)(1).  That time limit does not apply to Petitioner's alternative ground for relief under Rule 60(b)(6), which empowers the court to alter a final judgment for any "reason that justifies relief."  *See* Fed. R. Civ. P. 60(b)(6); *Satterfield*, 872 F.3d at 163 (observing that "avoiding the wrongful conviction of an innocent person . . . is . . . deeply embedded within our system of justice").  But the court may do so only in "extraordinary circumstances where, without such relief, an extreme and unexpected hardship would occur."  *Cox v. Horn*, 757 F.3d 113, 120 (3d Cir. 2014) (internal citation omitted).  Such extraordinary circumstances will rarely exist  in habeas cases. *See Gonzalez v. Crosby*, 545 U.S. 524, 536 (2005).   When addressing a Rule 60(b)(6) motion premised on a change in decisional law, the district court "must examine the full panoply of equitable circumstances in the particular case before rendering a decision."  *Satterfield*, 872 F.3d at 155.  "These may include, in an appropriate case, 'the risk of injustice to the parties' and 'the risk of undermining the public's confidence in the judicial process.'"  *Buck v. Davis*, 137 S. Ct. 759, 778 (2017) (quoting *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 863-64 (1988)).

---

[8] Typically, in the habeas context, when a petitioner proffers "newly discovered evidence" to be considered on the merits, "although labeled a Rule 60(b) motion, it is in substance a successive habeas petition and should be treated accordingly." *Gonzalez v. Crosby*, 545 U.S. 524, 531 (2005).  However, when such a motion "merely asserts that a previous ruling which precluded a merits determination was in error—for example, a denial for such reasons as failure to exhaust, procedural default, or statute-of-limitations bar," then it is properly treated as a "true" Rule 60(b) motion.  *Id.* at 532 n.4.  Here, Petitioner challenges the denial of his habeas petition as time barred.  It was therefore correctly filed as a Rule 60(b) motion, and I will analyze it as such.  *See, e.g., Howell v. Superintendent Albion SCI*, 978 F.3d 54, 59 (3d Cir. 2020).

## III.    DISCUSSION

The question therefore is whether "extraordinary circumstances" justify altering the judgment denying Petitioner's habeas relief.  Specifically, I must decide whether Petitioner may now circumvent the AEDPA statute of limitations by means of the actual innocence gateway, given the subsequent change in law represented by the Third Circuit's decision in *Reeves*.  *See McQuiggin*, 569 U.S. at 383–84 ("Actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or expiration of the AEDPA statute of limitations").  For the reasons set forth below, I conclude that such extraordinary circumstances do not exist in this case and that the judgment should therefore stand.

 Evaluating whether Petitioner's claims qualify for the actual innocence gateway is a two-step process.  First, "the petitioner must present new, reliable evidence," and second, in light of that evidence, it must be "more likely than not that no reasonable juror would have voted to convict him." *Reeves*, 897 F.3d at 157 (citing *Schlup*, 513 U.S. at 324, 329).  Typically, "new reliable evidence" consists of "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324;  *cf. House v. Bell*, 547 U.S. 518 (clarifying that "the habeas court's analysis is not limited to such evidence").

With respect  to the first step,  as Magistrate Judge Rice cogently observed,  "*Reeves* did not change the substantive standard for evaluating actual innocence claims. . . . It merely expanded the scope of evidence that can be considered in an actual innocence claim." *Oliver v. Link*, No. CV 16-920, 2020 WL 8839870, at *3 (E.D. Pa. Aug. 18, 2020), *report and recommendation adopted*, No. CV 16-920, 2021 WL 963568 (E.D. Pa. Mar. 15, 2021).  The Court of Appeals concluded that new evidence is "not intended to be strictly limited to newly discovered evidence."

*Reeves*, 897 F.3d at 162. Rather, evidence is regarded as "new" even in circumstances where "it was known [at the time of trial] but not presented allegedly due to counsel's ineffective assistance." *Id.* at 157. Next, in evaluating the reliability of the evidence, "the court may consider how the timing of [the petitioner's] submission and the likely credibility of the [witnesses] bear on the probable reliability of that evidence, as well as the circumstances surrounding the evidence and any supporting corroboration." *Id.* at 161 (internal citation and quotation marks omitted). Finally, "in evaluating the second step—whether it is more likely than not no reasonable juror would convict the petitioner—the court 'must consider all the evidence, old and new, incriminating and exculpatory, without regard to whether it would necessarily be admitted under rules of admissibility that would govern at trial.'" *Id.* (internal citation omitted).

A. <u>Ineffective assistance claims regarding evidence not presented at trial</u>

Petitioner argues that trial counsel's alleged failure to mount an alibi defense, as well as counsel's alleged failure to investigate another suspect, Franklin Bond, should be considered "new evidence" following *Reeves*. Pet'r's Memo. L. Mot. Relief 4. As to the alibi defense, even assuming that it is "new" under *Reeves*, I already considered the credibility of Broaddus' affidavit and determined it to be unreliable when I denied the habeas petition. *See* 11/3/15 Order, ECF 20; R. & R. 12. In sum, the affidavit was provided decades after the conclusion of the trial by a co-defendant who was also convicted. *See Schlup*, 513 U.S. at 324 (Evidence is reliable if it consists of, *inter alia*, "trustworthy eyewitness accounts"). And, as the Commonwealth has consistently argued, Broaddus' affidavit re-enforces the prosecution's theory that Petitioner and Broaddus were in fact together at the time of the murder. R. & R. at 12; Govt. Resp. Opp'n Memo. 5; *see Reeves*, 897 F.3d at 161 ("the court may consider how the timing of [the petitioner's] submission and the likely credibility of the [witnesses] bear on the probable reliability of that evidence, as well as the

circumstances surrounding the evidence and any supporting corroboration"). As I concluded over five years ago, it is simply "not the type of evidence in light of which not even one reasonable juror would have voted to convict petitioner." R. & R. at 12. I reached the same conclusion when I denied the Petitioner's first motion for relief from Judgment. *See* 4/20/18 Order at 2, ECF 26. This claim, therefore, remains time barred by the AEDPA's one-year statute of limitations.[9]

As to what Petitioner now describes as trial counsel's failure to investigate an alternative suspect, Franklin Bond, *Reeves* does not even apply. In framing the issue regarding Bond as one of ineffective assistance of counsel, Petitioner makes an artful attempt to recast the constitutional arguments he made in his habeas petition. In the memorandum accompanying his habeas petition, Jackson argued that the "*trial court erred* in precluding Jackson's offering testimony to show that Franklin H. Bond might have been the culprit." Pet'r's Memo. L. Habeas Pet. 8 (emphasis added). Petitioner cannot now, on a Rule 60 motion for relief from judgment, re-cast this claim as one of ineffective assistance of counsel, so that it fits within the scope of *Reeves*. *See* 897 F.3d at 157. This evidence is therefore not "new," is not properly considered under *Reeves*, and continues to be time barred by the AEDPA's statute of limitations.

B. "Newly Discovered Evidence"

Next, Jackson submits statements purportedly offering "newly discovered evidence" in support of his innocence: (1) a notarized, 2017 "letter-statement" from Wanda Campbell, sister of co-defendant Gregory Campbell, and (2) an affidavit from a David Mack, his fellow inmate.

---

[9] Similar reliability concerns apply to testimony from others that Petitioner has suggested could have acted as alibi witnesses at trial, including Petitioner himself, co-defendant Campbell, Petitioner's brother-in-law, Claude Stevens, and co-defendant Broaddus' three children, who were aged 7, 9, and 11 at the time of the murder. Pet'r's Memo. L. Habeas Pet. 5, 11-12; *id.* at Appendix C. According to Petitioner, they would have all testified that Broaddus and Jackson—both convicted—were at Broaddus' home at 1816 North Newkirk Street when the murder occurred. Importantly, in over thirty years, none of the other proposed alibi witnesses have ever provided affidavits to the Court in support of Petitioner's innocence.

Pet'r's Memo. L. Mot. Relief 4, 7, Ex. B, C.  In the letter statement, Ms. Campbell purports to have heard from both her mother and brother Gregory that Petitioner "and Veleda [Broaddus] were home minding [their] own business and have no knowledge of any homicide."  Pet'r's Memo. L. Mot. Relief, Ex. B.  First, although not dispositive, this statement does not fit within the criteria of "exculpatory scientific evidence, a trustworthy eyewitness account, or critical physical evidence" laid out in *Schlup*.  *See* 513 U.S. at 324.  Second, it is not reliable.  Ms. Campbell nowhere asserts that she has firsthand knowledge bearing upon Petitioner's innocence.  Leaving aside the issue of hearsay, *see Reeves* at 161, Ms. Campbell reveals that her mother became aware of these facts by speaking with Broaddus.  *See* Pet'r's Memo. L. Mot. Relief, Ex. B.  I have already discussed the problems with Broaddus' statements.  Even if the statements came directly from co-defendant Gregory Campbell, who was himself convicted of murder,[10] the same shortcomings would exist. Ms. Campbell's letter-statement does not supply the type of evidence that would lead to a result where "no juror, acting reasonably, would have voted to find [Petitioner] guilty beyond a reasonable doubt." *McQuiggin*, 569 U.S. at 386.  And it bears reiterating that the victim's wife Freda Dowling identified Petitioner multiple times—both days after the crime, where she saw Mr. Jackson close up, and at the trial.

Finally, I turn to the affidavit from David Mack, a fellow inmate who met Petitioner in prison over thirty years after the murder conviction.  Mack Declaration/Affidavit ¶¶ 19-20, Pet'r's Memo. L. Mot. Relief, Ex. C.  It is aptly characterized as fanciful.  Mack asserts that when the murder occurred, he was twelve years old, that he lived on the ninth floor of Raymond Rosen apartments where it happened, that he heard the gun shots as he ascended the stair case of the apartments, and that he saw two men flee, "walking briskly" away from the scene.  *Id.* ¶¶ 1-6, 21.

---

[10] *See Com. v. Campbell*, 2019 WL 4200886, at *1.

Then, in prison more than thirty years later, after Mack had informed other inmates that he was available to assist with reviewing their legal issues, he came across Petitioner. *Id.* ¶ 19. He heard Petitioner's story and then concluded that Petitioner was not one of the two men that he saw leaving the scene of the murder that night. *Id.* ¶¶ 19-20. Even assuming the truth of this improbable array of coincidences—1) that Mack happened to live on the same floor of the Raymond Rosen Apartments where the murder occurred as a twelve-year-old boy, 2) that he was there at the time of the murder, 3) that he witnessed the assailants flee the scene, 4) that he was able to discern their faces as they fled "walking briskly," 5) that he happened to hear Petitioner's story after offering assistance to other prisoners facing legal issues, and 6) that he can remember the events with such clarity so many years later—Mack cannot claim that he was familiar with Petitioner's physical appearance in 1984. In fact, Mack acknowledges that he had never seen nor met Petitioner prior to their meeting in prison. *Id.* ¶ 21. Petitioner was sixty-six years old when Mack met him in 2017. *See Com. v. Jackson*, 2019 WL 4200999, at *5. Here, I echo the Pennsylvania Superior Court's description of Mack's conclusion that Petitioner was not one of the men he had seen over thirty years prior as "wildly speculative." *Id.*

Mack further claims that his mother lived on the same floor as Freda Dowling, that she was close friends with Dowling, and that—days or months after the murder—he overheard Dowling explaining to his mother "how angry she was at Gregory" and that she "had identified the wrong person." Mack Declaration/Affidavit ¶ 12. I agree with the Commonwealth: even assuming Mack properly recollects a stray comment from his mother's friend that he had overheard as a twelve-year-old, Ms. Dowling was purportedly angry with Gregory Campbell, not Petitioner. Consequently, the logical inference following from such remarks would not be that she targeted Mr. Jackson, but rather be that she had purposely misidentified co-defendant Campbell, the object

of her ire.  Resp. Opp'n Memo. L. 9-10.  And, in any event, Ms. Dowling testified against Petitioner later at trial.  In sum, considering all the evidence, Mack's proffered testimony is not reliable, nor would it compel any reasonable juror to acquit the Petitioner.

## IV.    CONCLUSION

Mr. Jackson has failed to identify extraordinary circumstances that would warrant altering this Court's judgment denying him habeas relief.  In making this determination, I do not deem there to be a "risk of injustice to the parties," nor a "risk of undermining the public's confidence in the judicial process."  *Buck v. Davis*, 137 S. Ct. at 778 (internal citation omitted).  Public confidence would be more at risk by granting relief on a record this flimsy so many years after the fact.  Petitioner has not brought forth new, reliable evidence from which "no reasonable juror would have found the [him] guilty."  *Schlup*, 513 U.S at 329.  He cannot make a credible showing of actual innocence.  Therefore his motion will be denied, without the issuance of a Certificate of Appealability.  *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

An appropriate Order follows.


/s/ Gerald Austin McHugh
United States District Judge